

**SIGNED this 21st day of February, 2012.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| *In re* | BANKR. CASE NO. |
| RICHARD C. SMITH & <br> ANN M. SMITH | 04-50723 |
| *Debtors* | |
| RICHARD C. SMITH & <br> ANN M. SMITH <br><br> *Plaintiffs,* <br> v. <br><br> CITIMORTGAGE, INC., ARACELI GREGORY & <br> BRYAN SCHREPEL <br><br> *Defendants.* | ADV. NO. 11-05136 |

**MEMORANDUM OPINION ON MOTION TO DISMISS**

The Debtors in this case (the "Smiths") filed a Complaint against CitiMortgage and two of CitiMortgage's employees, Araceli Gregory and Bryan Schrepel (together, "CitiMortgage")

1

on August 24, 2011. CitiMortgage filed a Motion to Dismiss on September 21, 2011 [Docket No. 7]. On November 15, 2011 the court granted the Smiths' Motion for Leave to File Amended Complaint [Docket No. 13], and on November 16, 2011, the Smiths filed their Amended Complaint [Docket No. 14]. CitiMortgage filed a Renewed Motion to Dismiss [Docket No. 17] on November 29, 2011, and on December 12, 2011, the Smiths filed an Objection to Citimortage's Renewed Motion to Dismiss [Docket No. 18]. The following discussion addresses the Smiths' Amended Complaint, CitiMortgage's Renewed Motion to Dismiss, and the Smiths' Objection to CitiMortgage's Renewed Motion to Dismiss.

The (summarized) facts as alleged in the parties' pleadings include the following:

The Smiths bought a home from Kaufman and Broad of Texas, Ltd. on February 10, 2000. The Smiths' mortgage was secured by a deed of trust in favor of Kaufman and Broad Mortgage Company ("Kaufman"), which secured two real estate lien notes in the amounts of $137,550 ("Note A") and $20,000 ("Note B"). Also on February 10, 2000, Kaufman transferred its interest in the Smiths' deed of trust to First Nationwide Mortgage Corporation. On March 7, 2000, Kaufman again transferred its interest in the deed of trust to First Nationwide with respect to both Note A and Note B. On May 22, 2000, First Nationwide assigned its interest in Note A to Veterans Land Board of Texas, but retained the servicing rights to Note A. The Smiths assert that it is unclear whether First Nationwide also transferred its interest in Note B to the Veterans Land Board. In any event, both Note A and Note B were ultimately acquired by CitiMortgage from the respective owners of those Notes. This assignment to CitiMortgage took place after defaults under both Notes had already occurred.

The Smiths filed for protection under Chapter 13 of the Bankruptcy Code on February 2, 2004. They were in default under both Notes at this time. The Smiths' Chapter 13 plan was confirmed on July 9, 2004, and an amended order confirming the plan was entered on July 29, 2004. The plan provided that the Smiths would cure the default on the Notes. During the course of their Chapter 13 plan, the Smiths allegedly paid Note B (the $20,000 Note) in full and satisfied the arrearage on Note A (the $137,550 Note). The Smiths allege that CitiMortgage failed to document and direct payment by the Smiths of Note B, despite court orders requiring it to do so.

The Smiths completed their plan and received a discharge on July 7, 2010. On September 17, 2010, the Smiths filed an adversary proceeding (the "First Adversary Proceeding") against CitiMortgage, Texas Veterans Land Board and Federal National Mortgage Association, Case No. 10-05104, wherein the Smiths alleged that the Defendants had repeatedly violated multiple court orders and failed to give them credit for home mortgage payments made including the payoff, years earlier, of one of the two notes held or serviced by the Defendants. The Smiths also alleged various statutory and common law claims and requested sanctions for contempt of court.

2

On December 17, 2010, CitiMortgage finally filed its release of lien on Note B (the $20,000 Note). After much discovery, the parties settled the remainder of the claims in the First Adversary Proceeding. Although the settlement agreement was confidential, the Smiths assert that it provided for CitiMortgage to release its liens, deliver the larger of the two notes (Note A) marked paid to the Smiths, and delete all tradelines referring to the Notes as in default. CitiMortgage further states that the settlement agreement includes the following release of the Smiths' claims against:

> [CitiMortgage] … and [its] current and former predecessors … and all of the aforementioned's respective agents, employees, officers, directors, shareholders, attorneys, collection agencies, credit reporting agencies and vendors … from all claims of any kind … that [the Plaintiffs'] may have with respect to the [Previous Adversary], the [Plaintiffs' Bankruptcy], the Loans, or any other matters between [the Plaintiffs] and Releasees.

The court entered an order approving the parties' settlement agreement with respect to the First Adversary Proceeding on May 23, 2011.

On June 7, 2011, CitiMortgage filed its Satisfaction of Note and Release of Lien on Note A (the $137,550 Note) in the public records of Bexar County. This lien release was signed by Bryan J. Schrepel (a named Defendant in this adversary proceeding) on behalf of CitiMortgage. Mrs. Smiths' name was allegedly misspelled on the release documents, and the Smiths allege that this clouded the title to Mrs. Smith's homestead. The Smiths allege that despite repeated requests by the Smiths to CitiMortgage to correct this error, CitiMortgage refused to do so, in violation of their obligations under the settlement agreement and this court's order approving the settlement. The Smiths further allege that CitiMortgage and Mr. Schrepel failed to return the original Note A to the Smiths, also in violation of their obligations under the settlement and this court's order approving it.

The Smiths further allege that, following execution of the settlement agreement, CitiMortgage reinserted previously deleted tradelines, which were then submitted to credit bureaus, stating that the Smiths' Notes were in default. The Smiths state that despite repeated requests to CitiMortgage to correct this inaccurate reporting, CitiMortgage (although it acknowledged the dispute and promised to correct the reporting error) failed to do so, thus damaging the Smiths' credit and preventing Mr. Smith from obtaining two vehicle loans for which he had applied. The Smiths maintain that this inaccurate credit reporting took place during the months of June, July, August and September of 2011. Furthermore, in September, 2011, the Smiths assert that a CitiMortgage representative indicated to the Smiths that their loans remained in default, and that the mortgage had been forwarded to CitiMortgage's litigation department to commence foreclosure proceedings. Indeed, in August and September of 2011, the Smiths allege that CitiMortgage's collection department sent two demand letters to the Smiths, stating "This is an attempt to collect a debt, and any information obtained will be used for that purpose." Both

letters purportedly stated that Note A was in default, and that to cure the default, the Smiths would have to "pay the past due amount of $3,272.88, including $0.0 in late charges and $27.00 in delinquency related expenses." The Smiths further allege that each letter stated:

> [F]ailure to cure the default by 09/09/11 will result in acceleration of the loan. This means the entire unpaid balance will become due. Also, your property may be sold in accordance with the terms of the deed of trust and applicable law. The deed of trust entitles us to collect all expenses incurred in pursuing our remedies…You have the right to bring a court action to assert the non-existence of a default or any other defense which you have to acceleration and the sale of the property.

As of August 14, 2011, the Smiths assert that CitiMortgage's web-based accounting system showed that the Smiths still owed CitiMortgage $111,260.00.

The Smiths maintain that CitiMortgage's post-settlement conduct—failing to delete tradelines regarding the Smiths' mortgage account as agreed in the settlement, reporting inaccurate information to credit bureaus months after the settlement was executed, failing to correct this inaccurate reporting to credit bureaus after the Smiths complained of it to both CitiMortgage and the credit bureaus, failing to return the original Note A to the Smiths as required by the settlement, attempting to collect a discharged and released debt from the Smiths, and improperly commencing foreclosure proceedings on a released, discharged debt—violated the parties' settlement agreement, the court order approving it, and the discharge injunction. The Smiths seek sanctions for contempt in this regard. The Smiths further assert that CitiMortgage's conduct violated that Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and the Texas Debt Collection Act. Finally, the Smiths allege that CitiMortgage should be found liable for breach of contract, the common law tort of unreasonable collection efforts, and defamation. The Smiths request actual and exemplary damages, interest and attorneys' fees.

The Smiths' bankruptcy case was administratively closed on September 1, 2011.

Citimortgage's Renewed Motion to Dismiss seeks dismissal of each claim contained in the Smiths' complaint for various reasons, including lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state and claim under Rule 12(b)(6).

**Discussion**

1. Standards for Rule 12(b) Motions to Dismiss

A complaint may be dismissed for failure to state claim under Rule 12(b)(6). The Supreme Court has recently elaborated on the standard to be applied for motions to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, the Court stated that Rule 8(a)(2) of

4

the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). When such a complaint is attacked under Rule 12(b)(6), the plaintiff is obligated, with regard to the grounds upon which the complaint rests, to furnish more than labels and conclusions. "[A] formulaic recitation of the elements of the cause of action will not do[.]" *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that conclusory factual allegations, formulaic or threadbare recitations of the elements of a claim, and bare legal conclusions are not presumed to be true). "Factual allegations must be enough to raise a right to relief above the speculative level," and must do more than simply create a "suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, FED. PRAC. AND PROC. § 1216, pp. 235-236 (3d ed. 2004)).

The Court further explained that "[a]sking for plausible grounds to infer [the existence of an element of a cause of action] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of that element]." *Id*. at 556. Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. In support of this approach, the Court observed that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value'....[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id*. at 558. (internal citations and quotations omitted). Nonetheless, in reviewing a 12(b)(6) motion, the court must accept all well-pleaded facts as true. *Broyles v. State ex. rel. Abbott*, 2010 U.S. App. LEXIS 12151, at *5 (5th Cir. 2010).

Finally, under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). *See also Champions Truck & Equip. Inc. v. Patterson*, 2008 U.S. Dist. LEXIS 55343, at *5 (S.D. Tex. July 21, 2008) ("'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'") (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)). The party asserting jurisdiction bears the burden of proof of a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). Bankruptcy courts have limited subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). "When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Champions Truck & Equip. Inc. v. Patterson*, 2008 U.S. Dist.

LEXIS 55343, at *5 (quoting *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir. 1997)).[1]

---

[1] The Smiths cite 11 different statutes that purportedly confer jurisdiction on this court over the claims contained in the Smiths' complaint. CitiMortgage correctly notes that most of these statutes are not, in fact, jurisdictional in nature. Section 1334(b) of Title 28 (bankruptcy jurisdiction) and section 1367 of Title 28 (supplemental jurisdiction) are jurisdiction-granting statutes. However, bankruptcy courts may not exercise supplemental jurisdiction under section 1367. As explained by the Fifth Circuit:

> Examination of the bankruptcy jurisdiction statute itself also counsels against extending supplemental jurisdiction to the bankruptcy courts. As several courts have commented, 'there are … strong … arguments to support the position that the "relate to" and "arising in" jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding.' *Wilcox v. Houghton (In re Houghton)*, 164 Bankr. 146, 148 (Bankr. W.D. Wash.1994) (quoting *In re Alpha Steel Co.*, 142 Bankr. at 471); *accord In re Fisher*, 151 Bankr. at 899.
>
> Analysis of the statutory language empowering district courts to refer certain cases to the bankruptcy courts yields a similar result. As described above, 28 U.S.C. § 157 governs the types of cases that a district court may refer to a bankruptcy court, stating in part that, 'each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.' 28 U.S.C. § 157(a). Additionally, § 157 distinguishes core and non-core cases, providing that bankruptcy courts may 'hear and determine' core cases, but noting that bankruptcy courts may only submit findings of fact and conclusions of law to the district court in non-core cases. *See* 28 U.S.C. § 157(b), (c). Absent from this grant of jurisdiction is any indication that district courts may refer to bankruptcy courts any cases that were before the district courts only on the basis of supplemental jurisdiction. As one commentator describes: [Section] 157(c)(1) speaks only of 'a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.' It is silent with regard to the power of a bankruptcy court to 'hear' or 'determine' a supplemental claim--a proceeding that is neither core nor related to the title 11 case. Block-Lieb, *supra*, at 810 (footnote omitted). Simply put, even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court. Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and 'the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive "relate to" and "arising in" jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous.' *In re Alpha Steel, Inc.,* 142 Bankr. at 471; *accord In re Houghton,* 164 Bankr. at 148. Thus, it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants.

*Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 572-573 (5th Cir. La. 1995); *see also Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007) ("Bankruptcy courts may not exercise supplemental jurisdiction [under section 1367]"); *Brown v. Cantey & Hanger, L.L.P. (In re Fort Worth Osteopathic Hosp., Inc.)*, 2008 U.S. Dist. LEXIS 48631, at *13-14 (N.D. Tex. June 25, 2008) (concluding that only the district court, and not the bankruptcy court, could exercise supplemental jurisdiction over a third party action that shared a "substantial common nucleus of operative fact with [the plaintiff's] adversarial complaint"). Accordingly, only 28 U.S.C. § 1334 determines the limits of bankruptcy jurisdiction.

Additionally, section 157 of Title 11 "does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334; rather, § 157 allows district courts to assign cases to the bankruptcy courts." *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. La. 1995); *see also Stern v. Marshall*, __ U.S. __ 131 S. Ct. 2594, 2607 (2011) (stating that section 157 "allocates authority to enter final judgment" but "does not implicate questions of subject matter jurisdiction"). While the Fair Credit Reporting Act and the Fair Debt Collection Practices Act both include grants of jurisdiction authorizing suits to be "brought in any appropriate United States district court without regard to the amount in controversy, or in any other court

2. Contempt

Although the Smiths have brought separate claims for contempt and for violation of the discharge order, the Smiths are actually seeking contempt sanctions *for* CitiMortgage's alleged violation of the discharge order as well as the order approving the parties' settlement agreement. The court will address these allegations as representing two different grounds for finding CitiMortgage in contempt of court.

CitiMortgage first argues that the Smiths' contempt claims (and, indeed, all of their claims) should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. CitiMortgage maintains that "[o]nce administration of a case concludes and a Court closes the case, no bankruptcy case is 'being administered' – the bankruptcy court's jurisdiction over all related matters therefore ends at closure of the case." (Ren. Mot. to Dismiss, p. 11.) *See, e.g, Walnut Assocs. V. Saidel*, 164 B.R. 487, 494-95 (stating, in the context of a chapter 11 case, that "where, as in this case, the bankruptcy case has been closed … this court does not retain any jurisdiction that would permit it to hear plaintiff's adversary complaint [alleging various state law tort claims], regardless of whether the bankruptcy court at an earlier time authorized plaintiff to employ counsel to bring these types of claims."). None of the cases relied on by CitiMortgage involve a debtor's post-discharge attempt to hold a defendant in contempt for violating court orders. For this reason, CitiMortgage's argument can be easily dispensed with. Bankruptcy courts always retain jurisdiction to interpret and enforce their own orders. *See Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, (2009) ("noting that "[t]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 Fed. Appx. 822, 826 (5th Cir. 2009) (noting a bankruptcy court has the authority to interpret its own orders); *Auto. Fin. Corp. v. Ray Huffines Chevrolet, Inc. (In re Parkway Sales & Leasing, Inc.)*, 411 B.R. 337 (Bankr. E.D. Tex. 2009) (recognizing bankruptcy court's "inherent authority to interpret and enforce its own orders"); *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010) (noting that "[i]t is well-settled that bankruptcy courts have … corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code") (citing 11 U.S.C. § 105(a)). Additionally, bankruptcy courts have the authority to conduct civil contempt proceedings. *Placid Refining Company v. Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir.1997). Accordingly, the Smiths' claims that CitiMortgage violated both the discharge injunction and this court's order approving the parties' settlement agreement are properly before this court.

The next question thus becomes whether the Smiths have adequately alleged their claims for violation of the discharge injunction and violation of the order approving the parties' settlement

---

of competent jurisdiction," (*see* 15 U.S.C. § 1681p and 15 U.S.C. § 1692k, respectively), bankruptcy courts are not district courts, and thus this court would only be another "court of competent jurisdiction" if independently granted jurisdiction by Congress. Such independent grant of jurisdiction is found in 28 U.S.C. § 1334: If the claim is at least "related to" the debtors' bankruptcy case, this court may exercise subject matter jurisdiction over it. The remaining statutory grounds cited by the Smiths in support of jurisdiction are not jurisdiction-granting statutes, and are in fact irrelevant to the question of this court's subject matter jurisdiction.

agreement. The Fifth Circuit has delineated the following test for civil contempt: the plaintiff must show that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*, 177 F.3d 380, 382 (5th Cir.1999).

Regarding the discharge injunction of section 524 of the Bankruptcy Code, as previously explained by this court:

> 'The discharge of a debt in bankruptcy "operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a). Section 524, however, does not prescribe the debtor a specific remedy if a creditor violates the discharge injunction. Absent an express remedy, a violation of the post-discharge injunction may only be sanctioned through a proceeding for civil contempt. *Beskin v. Maupin (In re Maupin)*, 384 B.R. 421, 431 (Bankr. W.D. Va. 2007); *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). "[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).
>
> To state a claim for the willful violation of the discharge injunction, a debtor must show that a creditor's "actions constitute[] an 'act . . . to collect . . . [the mortgage loan] as a personal liability of the debtor.'" *Kreeger v. U.S. Bank, N.A. (In re Kreeger)*, 2001 Bankr. LEXIS 2193, at *10-11 (Bankr. W.D. Va. 2001) (quoting 11 U.S.C. § 524(a)(2)). In addition to "[p]ostdischarge lawsuits," section 524(a)(2) prohibits "any act to collect a discharged debt, whether by letter, phone call or other means." 4 Collier on Bankruptcy P 524.02[2][a], [b] (15th ed. rev. 2008); *see* S.R. Rep. No. 95-989, at 5866 (1978), H.R. Rep. No. 95-595, at 6321 (1977) (stating that Congress intended the discharge injunction to be a "total prohibition on debt collection efforts."). To succeed the debtor must "show by [clear and convincing evidence] that the offending . . . entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of." *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (alteration in original).

*Eastman v. Baker Recovery Servs. (In re Eastman)*, 419 B.R. 711, 724-725 (Bankr. W.D. Tex. 2009) (quoting *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703, 2009 Bankr. LEXIS 706, *10-11, *25-26 (Bankr. W.D. Va. Mar. 25, 2009)). *See also Davis v. Farm Bureau Bank*, 2008 U.S. Dist. LEXIS 52241, at *5 (W.D. Tex. Apr. 30, 2008) ("Violation of the discharge injunction with notice of the discharge injunction is subject to a contempt remedy under 11 U.S.C. § 105(a). To find a creditor in civil contempt the court must find that the offending party knowingly violated a definite and specific court order."). In short, to survive dismissal for failure to state a claim, the Smiths must allege sufficient facts to support a plausible claim that CitiMortgage had knowledge of the Smiths' discharge and

8

willfully violated the discharge injunction by continuing its debt collection efforts. The Smiths' complaint adequately alleges that CitiMortgage, with full knowledge of the discharge injunction, continued to attempt to collect a released and discharged debt from the Smiths.[2] Accordingly, CitiMortgage's motion to dismiss, pursuant to Rule 12(b)(6), the Smiths' claim for contempt for violation of the discharge injunction is denied.

CitiMortgage also argues that the settlement agreement's "sweeping release" precludes the Smiths' claims for contempt for violation of the court order approving the settlement, for violation of the discharge injunction, and for breach of contract. CitiMortgage reads the release provision of the settlement agreement as applying not only to claims that already existed at the time of the settlement agreement, but also to all future claims the Smiths might acquire against CitiMortgage. Specifically, CitiMortgage states:

> The Plaintiffs have already settled and released these claims through the Court-approved Settlement. Specifically, through the settlement, they 'released' 'CitiMortgage … and [its] agents [and] employees … from all claims of any kind … that [the Plaintiffs'] may have with respect to … the [Plaintiffs'] Bankruptcy … or any other matters[.]'

(Ren. Mot. to Dismiss, p. 14.) The court declines to read this provision as precluding claims for breach of the settlement agreement itself and violation of the court order approving it. The court also declines to read this provision as precluding claims for violation of the discharge injunction that arise after execution of the settlement agreement. The provision above is best understood as applying to claims that the Smiths had at the time of execution of the settlement agreement.

The Smiths have adequately stated claims for violation of the discharge injunction (as described above) and for violation of this court's order approving the settlement agreement. The Smiths allege that CitiMortgage violated the court order approving the settlement agreement (and breached the underlying settlement agreement) when CitiMortgage 1) failed to return the $137,550 Note (Note A) to the Smiths marked paid; 2) failed to delete the negative tradelines associated with the Smiths' mortgage account; 3) failed to correct false reporting of the Smiths' creditworthiness to credit bureaus, even after the Smiths notified CitiMortgage of the error; 4) failed to correct CitiMortgage's internal records to reflect that the Smiths' mortgage debt had been satisfied; 5) continued to attempt to collect the satisfied/discharged debt; and 6) threatened to foreclose on a lien that had been released, paid and settled.

---

[2] It is worth noting that the mere reporting to a credit bureau of the existence of a debt, even one that is discharged, does not violate the discharge injunction absent other overt acts taken in an effort to collect a pre-petition debt. *See Davis*, 2008 U.S. Dist. LEXIS 52241, at *6; *In re Mahoney*, 368 B.R. 579, 584-90 (Bankr. W.D. Tex.2007); *In re Vogt*, 257 B.R. 65, 70 (Bankr. D. Colo.2000) ("[I]t cannot be said that the Defendant's position in this regard, [i.e., post-discharge credit reporting], standing alone, was in any way 'an act' to effect collection of the debt. Nor can the Defendant be faulted, under section 524, for refusing to correct this report."). Here, however, the improper reporting of a discharged debt was combined with overt acts taken to enforce that debt.

Court-approved settlement agreements may be enforced through contempt proceedings. *See Lelsz v. Kavanagh*, 673 F. Supp. 828, 840 (N.D. Tex. 1987) (stating that "[a] settlement agreement is a contract, but when incorporated into a judgment becomes a court decree" and concluding that an order giving final approval to a settlement agreement and discussing the terms thereof implicitly incorporated the agreement, such that violation of the settlement agreement supported a finding of contempt) (quoting *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir 1986)); *see also Nat'l Fiber Glass Products (Div. of G.K.L. Corp.) v. Amcon Indus., Inc.*, Civ. A. No. 91 C 3235, 1992 WL 345055, at *3 (N.D. Ill. Nov. 10, 1992) (finding that contempt jurisdiction lies for violation of court approved settlement agreement; rejecting argument that only contract remedies apply); *In re Peck*, 155 B.R. 301, 310 (Bankr. D. Conn. 1993) (finding breach of stipulation entered into by debtor and creditors and approved by bankruptcy court through a stipulated order opened up breaching party to contempt sanctions). Here, the order approving the parties' settlement agreement refers to the settlement agreement itself; the court notes that the court reviewed the parties' settlement agreement *in camera* because it was submitted under seal. The order approves, and thus gives effect to the settlement agreement. The Smiths' Amended Complaint contains sufficient factual allegations to support the Smiths' claim that CitiMortgage violated that court order when it breached certain specific terms of the settlement agreement. CitiMortgage's motion to dismiss, under Rule 12(b)(6), the Smiths' claims for contempt for violation of the discharge order and for violation of the order approving the settlement agreement is therefore denied.[3]

3. Unreasonable Collection Efforts / Fair Credit Reporting Act / Fair Debt Collection Practices Act

The Smiths allege that CitiMortgage engaged in unreasonable collection efforts, violated the Fair Credit Reporting Act ("FCRA"), and violated the Fair Debt Collection Practices Act ("FDCPA") when CitiMortgage: 1) knowingly furnished false information about the Smiths' creditworthiness, credit standing, or credit capacity to a credit reporting bureau, and continued to do so even after repeated requests by the Smiths to correct the information being reported by CitiMortgage, in violation of its common duties and statutory obligations under the FCRA; and 2) used "false, deceptive, or misleading representations or means in connection with the collection of any debt," or used "unfair or unconscionable means to collect or attempt to collect any debt" in violation of specific provisions of the FDCPA.

All of CitiMortgage's conduct of which the Smiths complain occurred after the Smiths' received their chapter 13 discharge. The only possible avenue for this court to exercise jurisdiction over the Smiths' post-discharge FDCPA and state law claims is the "related to"

---

[3] To determine, at the trial of this matter, whether the evidence is sufficient to show that CitiMortgage violated the court's order approving the settlement agreement, the court will necessarily have to examine whether CitiMortgage breached the underlying settlement agreement. Accordingly, the court will not dismiss the Smiths' breach of contract claim for lack of subject matter jurisdiction, but will consider it only to the extent that it informs a determination of whether CitiMortgage violated the settlement order.

prong of 28 U.S.C. § 1334(b). The test for determining whether the bankruptcy court has, non-core, "related-to" jurisdiction over a proceeding is whether the "outcome could have any conceivable effect on the estate being administered in bankruptcy." *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009). A civil proceeding "'need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Equity Broad Corp. v. Shubert (In re Winstar Communs. Inc.)*, 284 B.R. 40, 50 (Bankr. D. Del. 2002) (quoting *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

Here, resolution of the Smiths' FDCPA and state law claims can have no impact at all on the administration of the Smiths' bankruptcy estate. They have already received their chapter 13 discharge; the Smiths' bankruptcy estate no longer exists. Accordingly, the court lacks subject matter jurisdiction over these claims. *See Biege v. Sallie Mae Servicing, L.P. (In re Biege)*, 417 B.R. 697, 701 (Bankr. M.D. Pa. 2009) (finding that debtors' claims under the FDCPA based on post-Chapter 13-discharge activity did not fall within the bankruptcy court's 'related to' jurisdiction and dismissing debtor's FDCPA claim for lack of jurisdiction); *In re Steele*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001) (holding that bankruptcy court lacked jurisdiction over FDCPA and state law claims arising out of post-Chapter 13-discharge collection activity).[4] Because

---

[4] The cases relied upon by the Smiths in support of their argument that this court has subject matter jurisdiction over the Smiths' debt collection claims do not specifically address a bankruptcy court's subject matter jurisdiction over post-discharge debt collection claims brought by a debtor. Most of the cases cited by the Smiths—*In re Morrison*, 555 F.3d 473 (5th Cir. 2009), *In re Walker*, 51 F.3d 562 (5th Cir. 1995) and *In re Bradley*, 989 F.2d 802 (5th Cir. 1993)—discuss bankruptcy jurisdiction in contexts entirely different from post-discharge debt collection claims, and thus are of no help. In *In re Eastman* case, while this court did decide a post-discharge debt collection claim brought by a debtor in the bankruptcy court, the court did not specifically address its subject matter jurisdiction over that claim. 419 B.R. 711 (Bankr. W.D. Tex. 2009). The case of *Bolin v. Sears Roebuck & Co.*, while involving debt collection claims brought by debtor plaintiffs in connection with defendants' efforts to collect allegedly discharged debts, did not involve bankruptcy jurisdiction at all; that class action case was first brought in the district court, not the bankruptcy court. 231 F.3d 970 (5th Cir. 2000). Similarly, *Vick v. NCO Financial Systems, Inc.* also did not involve the issue of bankruptcy jurisdiction over post-petition debt collection claims; that case involved a class action first brought in the district court for violations of the discharge injunction and the FDCPA. 2010 WL 1330637 (E.D. Tex. 2010). Finally, in *In re Burns*, the bankruptcy court for the Southern District of Texas concluded that it had "core" subject matter jurisdiction over a chapter 7 debtor's post-discharge debt collection claims because those claims were based on the same facts as the debtor's claim for violation of the discharge injunction, and issues involving a debtor's discharge are "core." The court further reasoned that because the test for "related to" jurisdiction in the Fifth Circuit considers whether the "outcome could alter the debtor's rights, liabilities, options or freedom of action," it was broad enough to encompass the debtor's FDCPA and state law claims. 2010 WL 642312 (Bankr. S.D. Tex. Feb. 18, 2010). But *Burns* was not a chapter 13 case, and thus did not address the fact that a debtor's post-chapter 13 discharge debt collection claims could have no impact whatsoever on the administration of a debtor's concluded bankruptcy case. Even if this court were to agree with *Burns* that the Smiths' post-discharge debt collection claims are "core" claims because they arise from the same facts as the Smiths' claim for violation of the discharge injunction, the Supreme Court's recent decision in *Stern v. Marshall* would seem to preclude this court from entering a final judgment on the Smiths' debt collection claims. __ U.S. __, 131 S. Ct. 2594 (2011) (holding that bankruptcy courts "lacked the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim[,]" regardless of the fact that such actions are listed as "core" in 28 U.S.C. § 157).

11

resolution of the Smiths' unreasonable collection efforts, FCRA and FDCPA claims will have no impact on the administration of the Smiths' now-concluded bankruptcy case, these claims are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[5]

4. Defamation

This leaves only the Smiths' two claims for defamation under section 391.002 of the Texas Finance Code and Texas common law. For the same reasons discussed above in connection with the Smiths' unfair/unreasonable collection and reporting practices claims, this court lacks subject matter jurisdiction over these post-discharge state law claims; the success or failure of these claims will in no way impact upon the administration of the Smiths' concluded bankruptcy estate.

5. Individual Liability for CitiMortgage Employees

One last issue remains to be resolved: the Smiths' have named two individual employees of CitiMortgage as defendants in this adversary proceeding. Defendant Araceli Gregory signed the settlement agreement on behalf of CitiMortgage. The Smiths assert that Gregory had a "non-delegable" duty to ensure that the terms of the settlement agreement were carried out, but consistently failed to follow through on those obligations. Defendant Bryan Schrepel signed the Satisfaction of Note and Release of Lien with respect to Note A on behalf of CitiMortgage. The Smiths' assert that Schrepel had a "specific duty to properly release the lien of CitiMortgagem Inc. as mandated by the Court's order approving the parties' compromise," but failed to carry out that duty by refusing to correct the misspelling of Mrs. Smith's name on the release despite repeated requests from the Smiths to do so. The Smiths further assert that Schrepel and Gregory had the duty to return Note A marked paid, but failed to do so. They assert that Schrepel and Gregory also had the duty to correct the inaccurate reporting of the Smiths' credit, but failed to do so after repeated requests by the Smiths. The Smiths' Amended Complaint appears to assert the following claims with respect to these individual employees: 1) contempt; 2) violation of the discharge order; 3) breach of contract; and 4) unreasonable collection efforts.

Texas law is clear that "[a]s a general rule, a corporate agent who signs a contract on behalf of a corporation is not individually liable for performing the contract." *Globex Int'l, Inc. v. Disabato*, 2008 U.S. Dist. LEXIS 107213 (N.D. Tex. Aug. 19, 2008) (citing *Woodlands Christian Acad. v. Logan*, 1998 Tex. App. LEXIS 3185, 1998 WL 257002, at *3 (Tex. App.—[Beaumont] 1998, no writ)). Here, Gregory and Schrepel signed documents (the settlement and

---

[5] Furthermore, the Fifth Circuit has made it clear that a bankruptcy court's post-confirmation jurisdiction is far narrower than a bankruptcy court's general jurisdiction under 28 U.S.C. § 1334. *See Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."); *see also U.S. Brass Corp. v. Travelers Ins. Group, Inc.*, 301 F.3d 296, 304-05 (5th Cir. 2002). Thus, this line of case law also supports the court's conclusion that it lacks subject matter jurisdiction over the Smiths' debt collection / reporting claims.

the release of lien, respectively) as agents of CitiMortgage. Accordingly, Gregory and Schrepel cannot be held individually liable for CitiMortgage's failure to follow through on its obligations under those documents. Because Gregory and Schrepel cannot be held personally liable for CitiMortgage's alleged breach of the settlement agreement, Gregory and Schrepel also cannot be held in contempt for that breach.

The Smiths also assert that the individual defendants should be held jointly and severally liable with CitiMortgage for violation of the discharge injunction. The allegations in the Smiths' Amended Complaint that support their claim for violation of the discharge injunction are that CitiMortgage (not the individual defendants), after the Smiths received their discharge and after CitiMortgage executed the settlement agreement with the Smiths, repeatedly failed to correct inaccurate reporting of the Smiths' creditworthiness to credit bureaus, continued to attempt to collect a released, discharged debt, and commenced foreclosure proceedings based on incorrect internal records reflecting the Smiths' released, discharged notes as being in default. None of these allegations suggest that the individual defendants personally engaged in this wrongful conduct.[6]

For all of these reasons, the Smiths' claims against the individual Defendants will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. "Factual allegations must be enough to raise a right to relief above the speculative level," and must do more than simply create a "suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id*. at 558. Here, the only "legally cognizable" claim the Smiths' have asserted against the individual Defendants is their claim for violation of the discharge injunction. However, the Smiths failed to satisfy the factual pleading standards of Rule 8 of the Federal Rules of Civil Procedure in that the Amended Complaint contains no allegations that the individual Defendants personally engaged in any conduct that violated the discharge injunction.

**Conclusion**

For the reasons stated above, the court will dismiss all of the Smiths' claims with the exception of their claims for breach of contract and contempt for: 1) violation of the discharge

---

[6] The Smiths also assert a tort claim against the individual Defendants—unreasonable collection efforts. While it is true that "Texas courts have routinely found that 'a corporate officer may not escape [fraud or tort] liability where he had direct, personal participation in the wrongdoing, as to be the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity[,]'" *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 481 (5th Cir. Tex. 2009), here, the Smiths' tort claims have been dismissed for lack of subject matter jurisdiction.

order; and 2) violation of the order approving the settlement agreement between CitiMortgage and the Smiths. An order reflecting the court's ruling will be entered separately.

####